FREDERICK WOMMER v. MAX M. SEGELBAUM.

November 28, 1899.

Nos. 11,917—(83).

**Verdict not Sustained by Evidence.**

    *Held*, the verdict is so manifestly and palpably against the great weight of the evidence, and the uncorroborated oral evidence of the prevailing party is so completely contradicted by all the surrounding facts and circumstances, and is so unreasonable, that the court below abused its discretion in refusing a new trial.

**Books of Account—Testimony of Witness at Former Trial.**

    On a former trial of the action two of the account books were missing,

and could not be found, but were produced on the last trial. Plaintiff was asked on cross-examination if he did not testify on such former trial that these two books contained certain entries. The books were produced to him, and he was also asked if they did contain the entries. *Held*, it was error to refuse to require him to answer the questions.

Action in the district court for Le Sueur county to recover $1,435.55 alleged to be due plaintiff under a contract entitling him to a share in the profits of defendant's business. The case was tried before Cadwell, J., and a jury, which rendered a verdict in favor of plaintiff for $939.85; and from an order denying a motion for a new trial, defendant appealed. Reversed.

*Thos. Hessian,* for appellant.

*W. C. Odell,* for respondent.

CANTY, J.[1]

Plaintiff was employed in defendant's general store at Le Sueur, Minnesota, during the time from April 1, 1892, to August 31, 1896. He received, during that time, wages at the rate of $75 per month, which were paid to him at the end of every week. But he claims that by the agreement between them he was to receive as additional compensation 10 per cent. of the profits of the business during all of this time, and this action was brought to recover the same. On the trial, plaintiff had a verdict, and from an order denying a new trial defendant appeals.

Plaintiff testified that the agreement between him and defendant was made orally, about 10 o'clock one night, in defendant's bedroom at Le Sueur. No one else was present except himself and defendant, who admits that he agreed to pay plaintiff $75 per month, but denies that he ever agreed to pay him any more. Plaintiff's oral evidence as to the agreement to pay him the 10 per cent. of the profits is wholly uncorroborated by any other fact or circumstance in the case, is contradicted by a large number of admitted facts and circumstances occurring during the whole course of his employment, and, in our opinion, is so unreasonable and improbable, and the verdict is so much against the great and overwhelming

[1] BUCK, J., absent.

weight of the evidence, that the court below abused its discretion in denying a new trial.

During these four years and five months plaintiff kept defendant's books, and made nearly all the entries therein. But there is not a suggestion or an entry anywhere in the books to show that plaintiff had a particle of interest in the profits, or that it was necessary that the true and correct amount of the profits should be carried out in the books. Defendant had borrowed from his wife $6,308.10 and from his son $617.23, all of which was used in the business. Plaintiff, in carrying out the profits every year, never allowed the interest on these sums, which sums were also carried on the books to the credit of the lenders. Defendant occupied two adjoining stores, one of which he owned. But in carrying out the profits neither rent for defendant's own store (except for the year 1892) or the taxes on that store were taken into consideration, but the taxes were charged up against defendant in his personal account. After taking stock on January 1, 1893, the profit, ascertained on the basis aforesaid, was carried to the credit of defendant, the proprietor, in the following form: "January 21. By profit during the year, $3,288.31." In the same manner the profit for each of the following years was carried to the credit of the proprietor.

Plaintiff testified on the trial: "I did carry all this profit to the account of M. M. Segelbaum. It so appeared in the books all the time." On April 8, 1892, plaintiff charged himself on the books with the sum of $121.82, which he had taken out at various times prior to that date On November 28, 1892, he paid back $21.82 of this amount, and from that time until he was discharged, on August 31, 1896, the other $100 were carried year after year as a balance due from him He claims that the $100 was an advance made to him in anticipation of future profits, and testified that he paid back the $21.82 because he did not care to carry the money around in his pocket; he did not need it. Defendant testified that the money so advanced was a loan It will be observed that during all of this time plaintiff was carrying this item of $100 and his alleged share of the profits on the books as an asset of the business, and as the property of defendant. Plaintiff's explanation of why he did not draw out his share of the profits during these four years is that

he did not need the money. He further testified: "I drew out a portion of my share of profits for 1892. Did not draw out all because, in the first place, I did not need it. At the same time Mr. Segelbaum asked me to leave it in the business." But he had a family to support, and admitted on cross-examination that during all, or nearly all, of said time there were from one to three chattel mortgages on his household goods, including the bed on which he slept. Plaintiff testified that when stock was taken on the first of the year 1893 he spoke about his share of the profits. The witness testified:

"I told him [Segelbaum], 'I credit that amount to my account.' He said: 'Mr. Wommer, I rather have you not do that. I don't want the clerks to see what you are getting; and another thing, you know I want to sell out, and I want to make just as good a showing as possible. Besides, you don't need your money. You just as well leave it any way, and, when we settle up, you and I know what is coming to you.' I left it in that way. I had confidence in him."

But plaintiff does not claim that he ever spoke to defendant afterwards about the entry or division of profits until defendant was discharged, on August 31, 1896. On the 9th of that month defendant informed plaintiff that, unless he worked for smaller wages, he could not continue in defendant's employment, and to look for another place. He continued in defendant's employment until August 31, when he took $175 out of the safe, and charged it to himself on the books. On discovering that fact on the same day, defendant discharged him. At this time plaintiff claimed a share of the profits, and defendant testified it was the first time he had ever heard of any such claim.

These are the main features of the case, and we cannot take the time to go more into detail. Plaintiff offered many explanations which do not explain. The undisputed facts and circumstances in the case stand out so strongly against him, and contradict him so completely, that his uncorroborated and unreasonable story has very little weight. The verdict is so manifestly and palpably against the great weight of the evidence that it was an abuse of discretion to refuse to set it aside.

On the trial it appeared that two of the books so kept by plaintiff

were missing on a former trial, and could not be found. These books were produced on the last trial, and on cross-examination plaintiff was asked if he did not, on the former trial, testify that his share of the profits was plainly marked and apportioned in these two books. Objection to this was sustained. The books were produced to the witness, and he was also asked if there was any such mark or entry in them. Objection to this was also sustained. In our opinion, these rulings were erroneous. If the witness had so testified on the former trial, and the testimony was false, it had a tendency to discredit him on the last trial, and he should have been required to answer both questions.

The order appealed from is reversed, and a new trial granted.